IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:09-cr-00106 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| ) | |
| JASON PATE ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Vacate Modification of Conditions of Supervised Release. (Doc. No. 88, "Motion").[1] The Government responded in opposition to the Motion. (Doc. No. 104, "Response").[2] For the reasons stated below, the Motion is DENIED.

## BACKGROUND

On December 7, 2016, Defendant was charged in an Indictment with nine counts of transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Counts One – Nine); one count of knowingly receiving and attempting to receive child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1) (Count Ten), and knowingly making, printing, and publishing, a notice and advertisement seeking and offering to receive, exchange, and distribute depictions of minor(s) engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(d)(1)(A) (Count Eleven). (Doc. No. 1). On August 19, 2011, Defendant pled guilty to Count One, Ten, and Eleven of the Indictment pursuant to a plea agreement under Rule 11(c)(1)(C) wherein the parties agreed to recommend a term of imprisonment of 180 months and a term of

---

[1] The Motion is filed under seal. A redacted version of the Motion is available on the Court's electronic docket at Doc. No. 87.

[2] The Response is filed under seal. A redacted version of the Response is available on the Court's electronic docket at Doc. No. 104.

supervised release of 20 years. (Doc. No. 46). On March 30, 2012, consistent with the joint recommendation under Rule 11(c)(1)(C), the Court sentenced Defendant to 180 months' incarceration and 20 years' supervised release. (Doc. No. 74). The Court mandated four "Special Conditions" of supervised release:

> 1. The defendant shall not possess, own, or use in any fashion, including at work, a computer or any other electronic device capable of storing data.
>
> 2. The defendant's employment must be approved in writing by the U.S. Probation Office. The defendant cannot work where he would have access or control over a computer.
>
> 3. The defendant shall participate in mental health treatment and sex offender treatment as directed by the Bureau of Prison officials and follow whatever protocol is recommended upon his release.
>
> 4. The defendant shall not frequent any areas where children congregate such as parks or amusement centers.

(Doc. No. 74 at 4).

On March 9, 2021, Defendant was released from FCI Butner Low and sent to a Residential Reentry Center (also known as a "halfway house"). The following facts are taken from Defendant's Motion and will be accepted as true for purposes of ruling on the Motion.

> When Mr. Pate arrived at the RRC, he inquired with his counselor there about obtaining and using a cell phone. He wanted to involve U.S. Probation so that, when he started supervised release, he would not have to surrender his cell phone or spend money on a different type of phone. Towards that end, he contacted his original attorney Caryll Alpert at the Federal Public Defender's office[]. Ms. Alpert [p]ut Pate in touch with the CJA panel administrator Ann Card who, in turn, gave him the number to CJA Panel lawyer Jodie Bell.
>
> On March 15, 2021, approximately one week after Mr. Pate was transferred to an RRC and while he was still in the custody of the BOP and had not yet begun his term of supervised release, U.S. Probation Officer Abigail Smith met with Mr. Pate at her office in Nashville. While in her office, Ms. Smith handed Mr. Pate a multi-page, fine-print, document purporting to add extremely onerous conditions to his supervised release. Two of the pages consisted of a waiver to the assistance of counsel and to a hearing concerning the modifications. The proposed modifications are detailed and lengthy and are clearly laid out in the Petition to Modify filed by

> Ms. Smith. (See, D.E. 77, PageID 239). Mr. Pate asked Ms. Smith to call Jodie Bell for him so he could consult with her. Ms. Smith dialed the number of Jodie Bell from her desktop telephone which was connected by wire to the wall. (In other words, Ms. Smith did not dial Jodie Bell from any mobile device.) Ms. Smith passed the handset to Mr. Pate and remained in the room while Mr. Pate spoke with his attorney.
>
> Mr. Pate contends that his conversation with Jodie Bell was brief and did not discuss the proposed modifications in great detail nor that he had a right to a hearing before any modification was entered nor that the Court did not have jurisdiction to enter any modifications while he was still serving his term of imprisonment. To the best of his recollection, Mr. Pate recalls that Jodie Bell advised him that this modification was rather routine. After the conversation, Mr. Pate signed two waiver forms agreeing to rather onerous conditions that were not part of the original

(Doc. No. 88 at 3-4). That same day the Probation Officer submitted a Petition to Modify the Conditions or Term of Supervision (Doc. No. 77). The Petition stated that "a waiver of hearing form to modify the conditions of Mr. Pate's supervised release was thoroughly explained to him. He stated he understood his rights to representation by counsel and to a hearing. Mr. Pate voluntarily signed the waiver to modify the conditions of his supervised release." (*Id*.). The Court entered the modification on March 16, 2021. (Doc. No. 77).

## ANALYSIS

Via the Motion, Defendant requests that the Court vacate the modification of supervised release entered by the Court on two grounds: (1) according to Defendant, the Court lacked jurisdiction to enter the order modifying the terms of supervised release, because Defendant was still in BOP custody when the modification was entered (Doc. No. 88 at 11-13); and (2) even if the Court did have jurisdiction to enter such modification, Defendant (according to him) did not knowingly waive his right to a hearing (*id.* at 13-15). The Court will explore Defendant's arguments in turn.

### I. Jurisdiction

Defendant starts with the premise that the modification, which was entered while

Defendant was at the halfway house, was entered while Defendant was technically in BOP custody. He then argues that a district court lacks jurisdiction to modify the terms of a defendant's supervised release while the defendant is still in BOP custody. (Doc. No. 88 at 11). Defendant contends that

> "The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment..." 18 U.S.C. §3583(a) (emphasis added). Accordingly, supervised release cannot begin until after a person is released from "imprisonment" or, in other words, released from the custody of the BOP. A district court may modify a defendant's sentence only as provided by statute. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir.2001) ("The authority of a district court to resentence a defendant is limited by statute" and is "expressly prohibit[ed]... beyond those exceptions expressly enacted by Congress."). "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir.1997). "[S]upervised release is a separate part of the original punishment . . ." *United States v. Robinson*, 62 F.3d 1282, 1286 (10th Cir.1995).
>
> Because there was no statutory authority for this Court to modify the conditions of supervised release while [Defendant] was still a prisoner in the custody of BOP, the modification made pursuant to a "petition" filed by a probation officer was without jurisdiction.

(*Id*. at 12).

In Response, the Government argues that 18 U.S.C. § 3583(e)(2) provides that a court may "modify, reduce, or enlarge the conditions of supervised release, *at any time prior to the expiration or termination of the term of supervised release*, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of post-release supervision." 18 U.S.C. § 3583(e)(2) (emphasis added). The Government maintains that this statute "gives the court jurisdiction to modify conditions of release up until the expiration or termination of supervised release but does not impose any prohibition for making such changes on the eve of the defendant's release from BOP

custody." (Doc. No. 104 at 5).

The Court agrees with the Government that (even assuming *arguendo* that Defendant is properly considered to have been in BOP custody while at the halfway house on March 16, 2021) this Court had jurisdiction to modify Defendant's terms of supervised release when it did so on March 16, 2021. (Doc. No. 77). The Court's authority to do so was clearly laid out in 18 U.S.C. § 3583(e)(2), which provides that the Court may alter Defendant's term of supervised release "at any time prior to the expiration or termination of the term of supervised release." The period before a defendant's release from BOP custody (and contemporaneous beginning of the term of supervised release) is undisputedly a "time prior to the expiration or termination of the term of supervised release." Notably, the statute does not say "any time *after the beginning of, but* prior to the expiration of the term of supervised release." Relatedly, and as the Government aptly points out, § 3583(e)(2) does not impose any prohibition on modifying the terms of supervised release while Defendant is in BOP custody. Thus, the Court finds that it acted within its authority (as granted by Congress) when it modified Defendant's terms of supervised release.

Defendant's arguments otherwise are unavailing. Defendant cites two out-of-circuit district court cases, but one of them is distinguishable and the other is unpersuasive. In the first, *United States v. Christy*, 888 F. Supp. 2d 1169 (D.N.M. 2012), the court rejected the defendant's request for the court to shorten his term of supervised release and explained that "[a] district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *Id*. at 1172. In *Christy*, the defendant was asking the court to modify his "term of imprisonment" by altering the *length* of his term of supervised release. *Id*. at 1169. That does not equate to a request to modify the *terms* of supervised release, which the Court clearly has statutory authority to do pursuant to 18 U.S.C. § 3583(e)(2). Thus, *Christy* is distinguishable.

In the second, *United States v. Travis*, No. 1:10-CR-0047-WSD, 2014 WL 29123 (N.D. Ga. Jan. 3, 2014), the court opined in dicta that a district court may not have jurisdiction to modify terms of supervised release prior to a defendant's release from BOP. *Id.* at *2. The court surmised that "[t]he terms of the statute [§ 3583(e)(2)] appear to imply that the service of supervised release must have begun but may be revised before its 'expiration' or 'termination.'" *Id.* However, the court declined to "address whether Section 3583(e) allows a pre-release modification motion," because the defendant requested a modification of "the structure of his supervised release" that was to occur 35 months later; thus, the court denied the request as untimely. *Id.* The Court does not find the reasoning in *Travis* to be persuasive. First, the court merely opined *in dicta* that a district court *may* not have jurisdiction to modify the terms of a defendant's supervised release while the defendant is still in custody of the BOP. And second, the Court respectfully disagrees with the court in *Travis*'s surmising that the language of § 3583(e) "appear[s] to imply that the service of supervised release must have begun but may be revised before its 'expiration' or 'termination.'" *Id.* A review of § 3583(e), in this Court's view, reveals nothing that implies conditions of supervised release may be modified only after such supervision has begun. Therefore, the Court does not find *Travis* persuasive.

Accordingly, the Court finds that it acted within its authority under 18 U.S.C. § 3583(e)(2) when it modified Defendant's terms of supervised release prior to his release from BOP custody (assuming *arguendo* that Defendant indeed was in BOP custody when such modification occurred).

**II. Waiver**

Defendant next argues that he did not knowingly waive his right to a modification hearing. (Doc. No. 88 at 13-15).

Federal Rule of Criminal Procedure 32.1(c) provides that a court must hold a hearing before modifying the conditions of probation or supervised release. The rule also provides that a hearing is not required if the person waives a hearing. Fed. R. Crim. P. 32.1(c)(2)(A). The defendant's waiver must be knowing and voluntary, or else it fails to comport with due process and thus is invalid. *See United States v. Williams*, 321 F. App'x 486, 489–90 (6th Cir. 2009); *see also Latson v. United States*, 68 F. App'x 544, 552 (6th Cir. 2003). In assessing waiver such a waiver is knowing and voluntary, courts look to the totality of the circumstances. *United States v. Melton*, 782 F.3d 306, 311 (6th Cir. 2015). Although the Sixth Circuit has not addressed the applicable standard governing such waivers in the context of a Rule 32.1(c) modification hearing, other courts have "applie[d] the same standards set forth in the context of waivers of Rule 32.1(b) violation hearings." *United States v. Smith-Hodges*, No. 2:09-CR-20152-JPM, 2020 WL 3146587, at *5–6 (W.D. Tenn. June 12, 2020). "A full Rule 11 colloquy is not required in the supervised release context[.]" *Id.* (citation omitted). "Instead, the [defendant's] waiver need only be knowing and voluntary under the totality of circumstances." *Melton*, 782 F.3d at 311. Among the circumstances to consider when conducting the totality-of-circumstances analysis are (1) whether the accused was apprised of the consequences of waiving his right to a hearing, (2) his understanding of the possible consequences of the modification, and (3) his comprehension of the modifications to the terms of his supervised release. *See Melton*, 782 F.3d at 311. "Still, '[t]he totality of the circumstances means exactly that—all the circumstances should be considered,' and 'courts should beware of assigning talismanic significance to any single fact or circumstance' as 'each case is quite likely to be sui generis.'" *Id.* (quoting *United States v. Correa–Torres*, 326 F.3d 18, 23 (1st Cir. 2003).

In *Smith-Hodges*, the court explained that "[n]o explicit direction has been given as to who

bears the burden of proving that the waiver was knowing and voluntary[.]" 2020 WL 3146587, at *5. In light of this lack of direction, the court chose to "adopt[] the general rule in the context of waivers of constitutional rights and finds that the Government bears the burden of proving by a preponderance of the evidence that the waiver of the right to a modification hearing was knowing and voluntary." *Id*. (citing *United States v. Gilmore*, No. 3:09–CR–27, 2009 WL 7063098, at *4 (E.D. Tenn. Nov. 25, 2009)). The court further explained:

> Although the burden of proving that a waiver of a right to a modification hearing always rests with the Government, the existence of a written waiver signed and executed by the defendant is prima facie evidence that the defendant knowingly and voluntarily waived his right to a modification hearing. *See United States v. McCray*, 672 F. App'x 593, 594 (7th Cir. 2016) (unpublished); *see also United States v. Knauss*, 170 F. App'x 772, 773 (2d Cir. 2006) (unpublished); *Wright*, 2019 WL 3219335, at *3; *United States v. Rockot*, No. 97–33, 2014 WL 558781, at *3 (W.D. Pa. Feb. 13, 2014). The Sixth Circuit has not addressed the issue, but several circuit and district courts have concluded that proof that a defendant signed a written waiver which clearly informed the defendant of his right to a modification hearing and counsel is sufficient to demonstrate that a waiver was both knowing and voluntary. *See, e.g., McCray*, 672 F. App'x at 594 (finding that defendant's right to a modification hearing was knowingly and voluntarily waived because the "Probation Form 49 in the record clearly shows that McCray waived his right to counsel and hearing, and that he agreed to the modification"); *Rockot*, 2014 WL 558781, at *3 (finding that a waiver form which "expressly advis[ed] defendant that he had a right to a modification hearing with the assistance of counsel" and indicated that "he understood that he was waiving those rights, along with defendant's signature on that waiver form, [were] sufficient to establish that defendant knowingly and voluntarily waived those rights").
>
> Defendant may, however, rebut the Government's prima facie showing of waiver. Proof of a signed waiver form is sufficient unless the defendant can provide some credible evidence, other than a mere denial, demonstrating that the defendant's signed and executed written waiver was not knowing and voluntary. *See Knauss*, 170 F. App'x at 773 ("[T]he waiver agreement itself recites the rights Knauss waived and the more onerous conditions to which he subjected himself, indicating in the absence of contrary evidence that Knauss understood his rights and the action that would be taken against him." (emphasis added)); *see also Rockot*, 2014 WL 558781, at *3 ("Defendant does not allege that he was coerced into signing the document and there is no evidence that he did not understand the rights that he was waiving or that the language used in the waiver was unclear or ambiguous."). Once a signed waiver form has been produced, the burden of production shifts to defendant to rebut the Government's prima facie showing of waiver. *See Knauss*,

> 170 F. App'x at 773; *see also Poindexter*, 444 F. App'x at 583 (noting that defendant's argument failed because he "never claimed the language was unclear or ambiguous in any way"). If such evidence is produced, the Government, who at all times bears the burden of proving waiver, must put forth evidence demonstrating that the waiver was knowingly and intelligently made. *See Gilmore*, 2009 WL 7063098, at *4. The Court may in some cases be required to hold an evidentiary hearing on the issue. *See United States v. Poe*, 220 F. App'x 446, 449 (8th Cir. 2007) (reversing district court on issue of "disputed executed waiver" and remanding for further fact finding).

*Id.* at *5-6. This Court concurs with the court in *Smith-Hodge*'s conclusion that proof of a signed a written waiver that clearly informed the defendant of his right to a modification hearing and counsel is sufficient for the Government to demonstrate a prima facie showing that a waiver was both knowing and voluntary. But the defendant may rebut that prima facie showing by producing evidence that indicates that the defendant's waiver was not knowing and voluntary.

Here, Defendant does not dispute that he signed and executed a written waiver of his right to a modification hearing and counsel. (Doc. No. 77 at 3-4 "Waiver of Hearing to Modify Conditions of Probation/Supervised Release"). The waiver clearly indicates that Defendant was advised of his right to "a hearing and assistance of counsel before any unfavorable change may be made" to the terms of his supervised release, and that he "voluntarily waiv[ed] [his] statutory right to a hearing and assistance of counsel." (*Id.*). The Government, therefore, has made a prima facie showing of waiver.

Defendant disputes the validity of that waiver. He contends that because he has dyslexia, he "has a difficult time comprehending what he reads and must read sentences over and over again in a quiet setting before he understands what he is reading." (*Id.* at 13). Defendant maintains that the US Probation Officer would have been aware of his dyslexia, and thus, "it was unreasonable [for her] to expect [Defendant] to read a lengthy, detailed, writing of changes to the conditions of his supervised release and two pages of fine print waiving his right to a hearing while sitting in a

probation office." (*Id*. at 14). Thus, he argues that "his waiver of hearing was invalid and he is entitled to a hearing before any modifications take effect." (*Id*. at 15).

In Response, the Government argues that the fact that Defendant is dyslexic "does not, by itself, support a claim of involuntary waiver, which is unsubstantiated and inconsistent with descriptions of the defendant's education . . . and employment described in the PSR." (Doc. No. 102 at 7). The Government asserts that Defendant himself admits that the probation officer discussed the waiver with him and allowed him to consult with his attorney prior to signing the waiver. (*Id*.). Further, the Government contends that Defendant "had previously agreed to sex offender treatment (and other) conditions in the plea agreement, which noted that polygraphs might be used as part of the treatment, and he did not complain until he was dissatisfied with the requirements of the program. [Thus,] the modification of the conditions related to the sex offender supervision was more of a clarification, not the imposition of a new or unknown condition." (*Id*.).

Generally, evidence of a cognitive impairment, without more, does not suffice to demonstrate that a waiver of one's rights was involuntary. *See United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989) ("Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process . . . ."); *see also Gilmore*, 2009 WL 7063098, at *4 ("Although the Defendant claims to have been incapable of making a knowing and intelligent waiver because of untreated medical conditions, these supposed conditions alone do not render his confession involuntary[.]"). Moreover, as the Government points out, Defendant's claim of dyslexia is unsubstantiated to the extent that the PSR indicates that Defendant's dyslexia is merely "self report[ed]." (Doc. No. 81 at 20-21). The PSR also reflects that Defendant received a score of "average intelligence" (as opposed to below-

average) according to the "Wechsler Adult Intelligence Score-Revised Verbal Scale" and that he successfully maintained years of employment in the technical services field. (Doc. No. 81 at 20-22). Moreover, Defendant has stated that he has a high school diploma and "some college education." (Doc. No. 46 at 1). This tends to indicate strongly that whatever challenges dyslexia may pose for Defendant (if in fact he suffers from it), he is able to overcome it and comprehend written (not to mention oral) communication. Based on this information, the Court finds that Defendant's explanation of his (self-reported) dyslexia does not rebut the Government's prima facie showing that Defendant's waiver was knowing and voluntary.

Viewing the circumstances in totality and taking the facts as Defendant alleges them, Defendant reviewed the modifications and waiver to a hearing in his probation officer's office and called his attorney to discuss the modification and waiver of hearing prior to his signing of the waiver. As far as the record reveals, Defendant never indicates that he did not understand the modifications or waiver until supervised release violation proceedings were initiated against him for allegedly violating the condition(s) imposed via the modifications (at which time he gained a substantial incentive to claim, whether or not sincerely, a lack of understanding).[3] Thus, the Court finds that Defendant's waiver of the Rule 32.1(c) modification hearing was knowing and voluntary and an evidentiary hearing to determine the validity of the waiver is thus unnecessary. Accordingly, Defendant's Motion to Vacate Modification of Conditions of Supervised Release. (Doc. No. 88) is DENIED.

---

[3] The Court takes no position on whether Defendant's claimed lack of understanding is sincere. It merely notes that Defendant's recent incentive to claim a lack of understanding is something the Court should and does take into account in assessing whether Defendant has met his resulting burden to show evidence indicating that his waiver of the hearing was not voluntary and intelligent.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE